IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:10-mj-6-SRW |
| | ) | [wo] |
| JESUS GUILLEN CAMPOS | ) | |

## OPINION AND DETENTION ORDER

On February 5, 2010, the Court heard argument and evidence to determine whether to detain or release Defendant Jesus Guillen Campos ("Guillen Campos" or "Defendant") in accordance the Bail Reform Act, 18 U.S.C. § 3142(f). Upon hearing all of the evidence and argument, I find no condition or combination of conditions will reasonably assure the appearance of Guillen Campos and the safety of any other person and the community.

Guillen Campos, an alien born in Mexico, is charged by a Complaint filed in this court with reentering the United States without the consent of the Secretary of Homeland Security and the Attorney General in violation of 8 U.S.C. §§ 1326(a) and (b)(2) after a previous deportation as a result of his conviction for an aggravated felony.[1] The Immigration and Customs Enforcement (ICE) division of the Department of Homeland Security has given notice by means of an ICE detainer dated February 4, 2010 that defendant's deportation or removal from the United States has been ordered.[2][3] It is undisputed that if the Court were

---

[1] "Any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C.A. § 1227(a)(2)(A)(iii).

[2] "If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or

to release Defendant on conditions pursuant to the Bail Reform Act, he would be immediately transferred to ICE custody by the United States Marshal and once in the custody of ICE he would be detained, without the possibility of bond, until he is deported pursuant to removal proceedings. *See* 8 U.S.C. §§ 1231(a)(1)(A), (a)(1)(B)(iii), and (a)(2) (providing for mandatory removal of the alien from the United States within a period of 90 days, to begin when the alien is released from detention or confinement; and for mandatory detention of the alien by the Attorney General during the removal period).

Unsurprisingly, since he faces inevitable deportation anyway, Guillen Campos prefers immediate removal from the United States over removal after a federal criminal prosecution which if convicted, results in a potential sentence of up to 20 years' imprisonment. Accordingly, Guillen Campos seeks release under the Bail Reform Act and in short, prefers to take his chances that, after ICE takes him into custody, he will be deported before he can be prosecuted. *See* 8 U.S.C. § 1231(a)(4)(A) ("Parole, supervised release, probation, or possibility of arrest or further imprisonment is not a reason to defer removal."). Moreover, he avers the government cannot meet its burden to prove that he is a risk of flight or danger to the community precisely because if released, his ICE detainer results in continuous custody

---

reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry." 8 U.S.C.A. § 1231(a)(5).

[3]     The Government did not enter the ICE detainer as an exhibit at the detention hearing, but the U.S. Marshal's office provided the Court a copy of it prior to the hearing. Therefore, the Court takes judicial notice of the pending ICE detainer.

until his deportation.

## I. DISCUSSION OF LEGAL STANDARDS

The law requires that any person, alien or not, charged with a felony offense must be taken without unnecessary delay to appear before a judicial officer and the judicial officer must either detain or release the defendant. FED. R. CRIM. P. 5. There are four categories of release or detention: (1) release on personal recognizance or unsecured appearance bond; (2) release on conditions; (3) temporary detention to permit revocation of conditional release, deportation, or exclusion, and (4) detention. 18 U.S.C. § 3142(a). To decide whether to release or detain a defendant, "the judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Pretrial detention of a criminal defendant is appropriate when "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The Government must prove flight risk by a preponderance of the evidence, and it must prove that the defendant is a danger to the community by clear and convincing evidence. *United States v. Quartermaine*, 913 F.2d 910, 915-17 (11th Cir. 1990); *United States v. King*, 849 F.2d 485, 488-89 (11th Cir. 1988).

18 U.S.C. § 3142(g) provides the factors to be considered "in determining whether there are conditions of release that will reasonably assure the appearance of the person as

required and the safety of any other person and the community." The relevant factors are: (1) the nature and circumstances of the offenses; (2) the weight of the evidence against the Defendant; 3) the Defendant's history and characteristics, including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct history relating to drugs or alcohol abuse, criminal history and record concerning appearance at court proceedings" and whether he was on probation, parole or pretrial release at the time the instant offense occurred; and (4) the nature and seriousness of the danger that would be posed to any person or to the community if Defendant were released pending trial. *Id*.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

John Williams, an Agent with ICE testified that on January 6, 2010, Stanley Benson, another ICE Agent, went to the Chilton County Jail and interviewed Guillen Campos. Guillen Campos was in the Chilton County Jail for public intoxication and failure to pay warrant for Assault 3rd degree. Guillen Campos identified himself as Jose Landa Zoro to local authorities when he was arrested. Guillen Campos also told Agent Benson that he is a citizen of Mexico who came into the United States without lawful permission. On January 26, 2010, Agent Williams gave Miranda warnings to Guillen Campos and obtained a statement from him. Guillen Campos told Agent Williams he unlawfully reentered the United States about three to four years ago and that he had been previously deported in 2006. The confidential pretrial services report, which both parties asked the Court to consider,

indicates Guillen Campos has numerous arrests and convictions. Guillen Campos was convicted of several violent offenses during his first illegal entry into the United States. From the arrest history alone, Guillen Campos was unlawfully within the United States for at least five years before his deportation to Mexico. Further, from his statements to ICE Agents, Guillen Campos has likely been unlawfully within the United States for at least the last ten years. =

Applying the factors outlined in § 3142(f), the Court finds that no condition or combination of conditions will reasonably assure the appearance of Guillen Campos or the safety of the community. Specifically, the Court finds that the criminal history of Guillen Campos, including his arrests and convictions, demonstrates he is a violent person who has no respect for the law or courts of the United States and her States. His unlawful presence within the United States for at least the last ten years is proof he will not obey any directives or conditions I may impose, indeed his very release would violate perhaps the most important condition of release, that he not continue to violate the law. Guillen Campos disagrees with the conclusions the Court reaches on grounds which shall be addressed in turn.

Guillen Campos argues his release to ICE officials means he will remain in custody until his deportation ergo he cannot pose a risk of flight or danger to the community. Ingenious but flawed is the conclusion reached when the position Guillen Campos advocates is applied to the law. First, the plain language of the statute directs a judicial officer to determine whether a condition or combination of conditions set out 18 U.S.C. 3142(c) will

reasonably assure Guillen Campos appears for all further proceedings and ensure the safety of others and the community. None of the specified release conditions include turning Guillen Campos – or any other defendant – over to immigration officials. Even if the statute could be interpreted to do so, for reasons set forth below in greater detail, this Court would not.

Next, the plain language of the statute speaks to release on conditions. *See* 18 U.S.C. 3142(c). Guillen Campos does not seek release, he in essence seeks transfer to ICE custody. Indeed, Guillen Campos acknowledges ICE will not likely, under the law, let him go free pending deportation. The Court finds Guillen Campos seeks transfer because he will most likely be deported under the law before the United States could finish his prosecution or he could serve his full sentence if a petit jury were to convict him. Guillen Campos cites no authority that a prisoner has a right to pick the institution to house him or the officials in whose custody he shall remain. Indeed to the contrary, a Judicial Officer who determines that detention pending trial is appropriate must enter an order directing that the person be committed to the custody of the Attorney General for confinement. 18 U.S.C. § 3142(I). While ICE is an Agency under the direction of the Attorney General, the United States Marshals Service is also an Agency of the Attorney General and the Court directs that the United States Marshal for the Middle District of Alabama retain custody of Guillen Campos pending trial.

Further, Guillen Campos argues the Court cannot consider any danger his release

might pose to the community or any other person because the United States seeks his detention only because of the risk of flight. In the alternative, Guillen Campos argues his danger to the community, if one were present, is abated by his detention by ICE. For the reasons already stated, the Court finds otherwise.

The Court finds that the government has established by a preponderance of the evidence that no condition or combination of conditions will reasonably assure defendant's appearance as required for prosecution of this case. § 3142(e)(1). Any other result would do violence to the plain meaning of the statute, which this court may not disregard. *United States v. Hoffman-Vaile*, 568 F.3d 1335, 1343 (11th Cir. 2009) ("In statutory construction, 'the plain meaning of the statute controls unless the language is ambiguous or leads to absurd results.") (internal quotations omitted); *see also United States v. Hurtado*, 779 F.2d 1467, 1477 (11th Cir. 1985) ("It is a venerated canon of statutory construction that, barring clear contrary indication, we must give words their usual, plain meaning."). Moreover, as already noted by this Court, the government has a legitimate interest in securing the appearance of a defendant at trial and the plain meaning of the statute addresses this very issue. *See Stack v. Boyle*, 342 U.S. 1, 5, 72 S.Ct. 1, 4, 96 L.Ed. 3 (1951) ("Since the function of bail is limited, the fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of that defendant."); *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir.1985) (citing *Stack*, 342 U.S. at 4, 72 S.Ct. at 3) ("The government's interest in securing the appearance of a defendant at trial is

constitutionally sufficient to warrant pretrial detention where necessary to insure that the defendant will not flee the jurisdiction."); *see also* 8 C.F.R. § 215.3 (The departure of an "alien who is needed in the United States as ... a party to[ ] any criminal case ... pending in a court in the United States" is deemed prejudicial to the interests of the United States.").

Despite the plain language of the statute, Defendant maintains that the Court should carve out an exception when the government, not the defendant, has created the risk of nonappearance. *See, e.g., United States v. Barrera-Omana*, 638 F.Supp.2d 1108, 1111 (D. Minn. 2009); *see also United States v. Molina-Tepozteco*, 07-cr-181 (PJS/SRN) at *6 (D. Minn. 2007) (Counsel for the Defendant submitted this case to the court at the conclusion of this detention hearing. A different judge from the District of Minnesota first holds the same holding later issued in *Barrera-Omana*.).[4] With all due respect to these courts, the Court declines to follow their holdings.

Forced deportation ordinarily might not be voluntary, but this Court finds that Guillen Campos determined that deportation is more advantageous to him than prosecution. Indeed, he expressly desires to be deported immediately presumably to defeat prosecution. Furthermore, if the government is correct that Defendant reentered voluntarily after a prior removal and a promise not to return, a second removal of the Defendant could hardly be

---

[4] The instant case differs from *Barrera-Omana*,. The *Barrera-Omana* court determined that absent the ICE detainer, the defendant would certainly merit release pending trial. This is not the case with Guillen-Campos as already discussed. Guillen Campos would not merit release because of his criminal history and the other reasons outlined by this Court.

construed as an event beyond his control.

Furthermore, Congress, not the Executive branch, decreed that the Defendant must be removed within 90 days of his release from confinement, and also mandated that the possibility of further imprisonment is not a reason to defer removal. *See* 8 U.S.C. §§ 1231(a)(1)(A), (a)(1)(B)(iii), (a)(2), and (a)(4)(A). The Court will set Guillen Campos' case for trial at the earliest practicable time, assuming the Grand Jury returns an indictment, but even if he were tried within 90 days of his release under the Bail Reform Act, he could not be sentenced during that period given the constraints of FED. R. CRIM. P. 32.

This is not to say that the certainty of detention and removal is irrelevant, and some courts have correctly declined to order detention where the outcome of immigration proceedings was speculative. *See, e.g., United States v. Montoya-Vasquez*, 2009 WL 103596, 3-4 (D. Neb. 2009) ("The Bail Reform Act does not permit this court to speculate on the 'risk' that a defendant would not appear in this court due to his being removed from this country by the same government that is prosecuting him... .There is no predicting the actions of ICE because the defendant is not in its physical custody, and the ICE Immigration Judge will not address his eligibility for bail until he is in its physical custody. In other words, I cannot address the risk of ICE removing the defendant from the United States without speculating about what the Immigration Judge may do. Speculation is not evidence, much less preponderating evidence."); *see also United States v. Lucas*, 2008 WL 5392121, 3 (D. Neb. 2008) (reaching the same conclusion since the court could not address the risk of

removal without speculating about what the immigration judge might do, as defendant had not yet been the subject of removal proceedings and there was no outstanding order of removal, but noting that "[t]his situation differs markedly from one in which a defendant has already been the subject of a removal order. *An outstanding order of removal would be strong evidence of likely nonappearance.*") (emphasis added).

In sum, no condition or combination of condition will reasonably assure the appearance of defendant as required and the Court must detain him pursuant to 18 U.S.C. § 3142(e)(1). *See United States v. Idais*, 2005 WL 1527715, 4 (E. D. Pa. 2005) (Concluding "that there is a serious risk that Defendant would flee if he were released on bail by this Court and subsequently released on bail by an immigration judge," and that "there is a possibility that Defendant could be deported prior to trial if he were released on bail and returned to the custody of the ICE. Consequently, the Court finds that there is no condition or combination of conditions which will reasonably assure the appearance of Defendant as required."). To hold otherwise would allow an alien but not a citizen to thwart the legitimate societal interest in seeing that the laws passed by Congress are obeyed by all. It further would give Guillen Campos, and other defendants like him who have been charged with illegal reentry under 8 U.S.C. § 1326 a "get out of jail free card." This Court refuses to allow Guillen Campos to do so and further declines to give illegal aliens more options and rights than citizens.

### III.  WRITTEN STATEMENT OF REASONS FOR DETENTION

This Court finds that the credible testimony and exhibits submitted at the hearing establishes by the preponderance of the evidence that the Defendant is a person who has previously been deported from the United States and has been thereafter found to be unlawfully within the Middle District of Alabama.  In addition, Defendant has been previously convicted of an offense of domestic violence and has been arrested for crimes of violence.  Indeed, when Guillen Campos was found in the Middle District of Alabama, he was in custody of the Chilton County Sheriff for failure to pay a warrant for Assault 3rd degree.  After considering all of the evidence and applying the appropriate standards, the Court concludes there are no conditions or combination of conditions which will reasonably assure the appearance of the defendant for all further proceedings (preponderance of the evidence) or the safety of the community (clear and convincing evidence).

### IV.  DIRECTIONS REGARDING DETENTION

The Defendant is committed to the custody of the Attorney General through his designated representative, the United States Marshal for the Middle District of Alabama, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States marshal

for the purpose of an appearance in connection with a court proceeding.

DONE this 10th day of February, 2010.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATE MAGISTRATE JUDGE